RECEIVED
2/3/09
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| SAMSUN LOGIX CORPORATION | : | DOCKET NO. 2:08 CV 1736 |
| VS. | : | JUDGE MINALDI |
| PARKROAD CORP, ET AL. | : | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the Court is a Motion for Interlocutory Sale of Vessel, the M/V MEGA PROGRESS, [doc. 7], filed by the plaintiff Samsun Logix Corp (hereinafter "Samsun"). Defendant Primary Marine Co. (hereinafter "Primary"), the owner of the vessel, filed an Opposition [doc. 19]. Samsun filed a Reply [doc. 27]. This Court heard oral argument on January 8, 2009. At the conclusion of the hearing, this Court took the matter under advisement awaiting a valuation estimate of the M/V MEGA PROGRESS from Primary, which was received on January 13, 2009.

## FACTS AND PROCEDURAL HISTORY

Samsun owns the M/V MONTE PELMO, and entered into a time charter contract with defendant Parkroad Corporation (hereinafter "Parkroad"), whereby Parkroad was to charter the vessel until at least August 15, 2009 for $70,500/day.[1] According to Samsun, Parkroad redelivered the vessel 288 days before the minimum date and owes Samsun $230,000 for pay hire.[2] Due to the credit crisis, Samsun alleges it is only able to get $10,000 per day to mitigate its loss, resulting in a

---

[1] Pl.'s Ex. A.

[2] Pl.'s Mot. in Support of Interlocutory Sale of Vessel [doc. 7], at 1.

loss of approximately $60,000 per day.[3] Thus, Samsun is suing for $17,190,632.[4]

The contract between Samsun and Parkroad provides for arbitration, and Samsun sought a maritime attachment of the M/V HARMONIC PROGRESS[5] to obtain security pursuant to 9 U.S.C. § 8 and Rule B of the Supplemental Rules for a London arbitration award, which this Court granted on November 19, 2008.[6] The United States Marshals then seized the ship.

Primary, not Parkroad, is the registered owner of M/V MEGA PROGRESS. Samsun alleges that Parkroad is the beneficial or nominal owner of the vessel, such that, ultimately, this Court should pierce the corporate veil and allow Samsun to use the M/V MEGA PROGRESS to satisfy Parkroad's debt.[7] In addition to personal service on the vessel's master, Samsun also served Parkroad via e-mail.[8] Samsun further published a Notice of Seizure in the *Lake Charles American Press* pursuant to Rules C(4) and C(6) of the Supplemental and Local Admiralty Rules.[9] This notice began running on December 5, 2008 and ran for twenty days.[10]

As of January 5, 2009, Samsun states that it has incurred $218,574.28 in custodial expenses.[11] At the hearing, Samsun presented a certificate of valuation estimating that the M/V MEGA

---

[3] *Id.* at 2.

[4] Pl.'s Ex. B.

[5] The vessel's name has since changed to the M/V MEGA PROGRESS.

[6] [doc. 2].

[7] Compl. ¶ 12 [doc. 1].

[8] Pl.'s Ex. C.

[9] Pl.'s Ex. G.

[10] Pl.'s Ex. I.

[11] Pl.'s Ex. A.

PROGRESS is worth $4.7 million.[12] On January 13, Primary faxed an estimate that the M/V MEGA PROGRESS is worth $5.5 million.

Primary filed its Answer on December 19, 2008.[13] In Opposition, Primary stated that it intends to file a Motion to Vacate Seizure on the basis that it 1.) is the owner of the vessel; 2.) it is not responsible for the debt that Samsun alleges is due; and 3.) it is not the alter ego of Parkroad. Furthermore, Primary indicated at hearing that it has had difficulty obtaining funds to post a release bond due to the current credit crisis. On January 16, 2009, Primary filed a motion to vacate [doc. 35] and a motion for expedited consideration of the motion to vacate [doc. 36]. Considering that this action commenced November 18, 2008 and Primary filed its Answer on December 19, 2008, this Court found it appropriate to allow Primary an opportunity to assert its ownership rights before ruling on the present motion. This Court heard oral argument on January 22, 2009, and denied Primary's Motion to Vacate from the bench.

After the Court ruled, the parties indicated their desire to agree upon an appropriate value for Primary to post as security. On January 29, 2009, this Court received a letter from Samsun stating that its proposal to consider a security arrangement has "not elicited any response" and requested that this Court now rule on the Motion for Interlocutory Sale. Counsel for Primary requested until February 2, 2009 to respond. On February 2, 2009, Primary responded via a two-page fax reasserting the arguments articulated in its Motion to Vacate that were previously rejected. Accordingly, this Court shall now consider Samsun's Motion for Expedited Sale.

---

[12] [doc. 33].

[13] [doc. 15].

3

## LAW

Fed. R. Civ. P. Supplemental Rule E(9) provides:

> (a) On application of a party, the marshal, or other person having custody of the property, the court may order all or part of the property sold–with the sale proceeds, or as much of them as will satisfy the judgment, paid into court to await further orders of the court–if:
>
>> (A) the attached or arrested property is perishable, or liable to deterioration, decay, or injury by being detained in custody pending the action;
>>
>> (B) the expense of keeping the property is excessive or disproportionate; or
>>
>> (C) there is an unreasonable delay in securing release of the property.
>
> (b) All sales of property shall be made by the marshal or deputy marshal, or by other person or organization having the warrant, or by any other person assigned by the court where the marshal or other person or organization having the warrant is a party in interest; and the proceeds of sale shall be forthwith paid into the registry of the court to be disposed of according to law.

Because Rule E(9) provides for interlocutory sales, it "does not require, or even mention, the resolution of the merits of any particular claim; instead, the Rule focuses entirely on avoiding the recognized complications associated with maintaining a vessel under arrest." *Freret Marine Supply v. M/V ENCHANTED CAPRI*, No. CIV.A.00-3805, 2001 WL 649764, at *1 (E.D. La. 06/11/2001) (noting that "it is patently clear that the issue of ownership is unresolved"). Moreover, Fifth Circuit law is clear that the plaintiff needs to demonstrate only one of the three scenarios to obtain an order for interlocutory sale. *See Merchants Nat'l Bank v. DREDGE GENERAL G.L. GILLESPIE*, 663 F.2d 1338, 1341 (5th Cir. 1981).

## ANALYSIS

Samsun argues that two out of the three Rule E(9) scenarios are present, thus justifying the

4

interlocutory sale of the vessel. Primary argues that none of the three requirements for interlocutory sale are present.

At the outset, Primary notes that if Samsun is ultimately successful on the merits, its custodial fees will be paid out of the proceeds of the sale. If, however, the attachment was wrongful, Samsun took the risk that it would incur unrecoverable expenses by attaching a vessel that was not owned by its debtor. It is Primary's position that ordering an interlocutory sale of the vessel now would cause Primary to lose its vessel for a debt it does not owe before it has the opportunity to present the Court with all of the evidence to support its position. Given that this Court first ruled on Primary's Motion to Vacate, this Court finds that this argument is no longer availing.

A.) Excessive or Disproportionate Expense

Samsun argues that the $4,677.49 per day in substitute custodian and dockage fees it has incurred is excessive. Samsun notes that other courts have found amounts much lower to be excessive or disproportionate. *See, e.g., ENCHANTED CAPRI*, 2001 WL 649764, at *2 (finding that daily custodial costs of $1,500 were excessive for a vessel worth $12 million); *Merchants Nat'l Bank*, 663 F.2d at 1342 (affirming a district court's holding that monthly costs of $17,000 associated with a vessel's seizure were excessive and warranted an interlocutory sale). Noting that it has already paid $95,359.54 in expenses through December 10, 2008, and that its weekly custodial expenses are $32,742, which is double that which the Fifth Circuit has found to be an excessive monthly fee in *Merchants Nat'l Bank*, Samsun argues that this Court should find its fees are excessive and allow an interlocutory sale.

Primary argues that the custodial fees are not excessive, especially given that the alleged debt

Samsun seeks to satisfy is $17 million.[14] Primary argues that Samsun has the burden of demonstrating that the custodial costs are disproportionate to the value of the vessel, and Samsun has failed to do so. *See, e.g., Gyasi v. M/V ANDRE*, 2008 WL 906761, *2 (S.D. Fla. 04/01/2008) (noting that the plaintiff failed to show the custodial costs were disproportionate because the plaintiff did not provide evidentiary support, such as an affidavit from a surveyor appraising the vessel). Primary notes that the first and second mortgages on the M/V MEGA PROGRESS are approximately $14 million and $12 million, respectively.[15] Thus, Primary argues that the total custodial costs through December 10 as alleged by Samsun total .5% of the debt and an even smaller percentage of the ship's value, which is not disproportionate as is required under Supplemental Rule E(9)(a)(i)(B). Primary further notes that *Merchants Nat'l Bank* was rendered in 1981 and is not an appropriate measure of excessive daily custodial costs for 2008.

In Reply, Samsun states that it has, as of January 5, 2009, incurred a total of $218,574.28, exclusive of interest and costs, to keep the vessel in custody.[16] Samsun thus argues that the additional costs it has incurred further support its position that "excessive or disproportionate costs" warrant interlocutory sale. Samsun further restates that Rule E(9) requires excessive <u>or</u> disproportionate costs. Samsun states that Primary argues solely that the cost is not disproportionate and disregards whether the cost is excessive.

---

[14] After the briefing finished, both sides presented evidence of valuation. The valuation estimates range from $4.7 million to $5.5 million, both of which are significantly less than Samsun's claim of $17,190,632. *See* Compl. [doc. 1].

[15] Pursuant to evidence submitted by both parties, the value of the vessel is between $4.7 million and $5.5 million.

[16] Pl.'s Ex. A.

6

In doing so, Samsun notes that Primary relies upon an unpublished case from the Southern District of Florida, *Gyasi v. M/V ANDRE*, No. 07-23282, 2008 WL 906761 (S.D. Fla. 04/01/2008). Samsun notes that the court did not address whether custodial expenses were excessive because the plaintiff did not raise this argument, and the court rejected the argument that custodial expenses were disproportionate because the plaintiff had not met its burden of proof. Samsun notes that its argument is based on excessiveness of costs, not disproportionality.

Rule E(9) requires that custodial expenses be excessive or disproportionate, and Samsun urges this motion on the basis of excessive cost. The determination of whether custodial expenses are excessive is naturally an inquiry that depends on the facts of the case. For example, in *M/V ENCHANTED CAPRI*, the Eastern District of Louisiana ordered an interlocutory sale primarily because of the excessive cost. 2001 WL 649764, at *2. The daily custodial fees were $1,500 per day for a vessel worth $12 million. *Id.* By contrast, in *Boland Marine & Mfg. Co., LLC v. M/V A.G. NAVAJO*, the court found that custodial fees were not excessive, where the fees totaled $31,000 over six months, and where the vessel's value was approximately $300,000. 02-0658, 2002 WL 31654856, at *2-3 (E.D. La. 11/22/2002) (noting that courts found expenses to be excessive or disproportionate when the amounts involved were much higher).

Having considered what other courts have and have not found excessive, as well as the evidence of expenses that Samsun presented and the parties' briefs and oral arguments, this Court finds that Samsun's custodial expenses are excessive, and therefore an interlocutory sale of the vessel is warranted.

### B.) Unreasonable Delay

Samsun also argues that the requirements of Supplemental Rule E(9)(a)(i)(C) are satisfied

because there has been an unreasonable delay in securing the release of the property. "Courts have found a delay reasonable when the delay was very brief and/or when the shipowner demonstrated active efforts to secure the release of the vessel." *Boland Marine & Mfg. Co.*, 2002 WL 31654856, at *2-3 (noting that longer delays may be reasonable where the shipowner actively attempted to resolve the terms of the vessel's release).

As Samsun points out, the Fifth Circuit has found that a lapse of almost three and a half months in securing the release of a vessel is an unreasonable delay. *See Silverstar Enters., Inc. v. M/V SARAMACCA*, 19 F.3d 1008, 1014-15 (5th Cir. 1994) (finding a delay of seven months to be unreasonable); *Boland Marine & Mfg. Co.*, 2002 WL 31654856, at *2-3 (finding a delay of over four months to be unreasonable, especially where the defendant provided no evidence of active efforts to secure the vessel's release). The ship in this case was seized on November 19, 2008. Samsun argues that the delay is unreasonable given the defendants' lack of effort to secure release. Primary argues that there is no case law supporting an interlocutory sale when a vessel has been detained less than three and a half months.

The parties do not cite, and this Court cannot find, a case in which a court found a delay of less than three and a half months to be unreasonable. The delay in this case is approximately two and a half months. Because the custodial fees are excessive, which warrants an interlocutory sale, this Court need not reach Samsun's alternative argument as to whether the delay is unreasonable.

## CONCLUSION

This Court finds that Samsun has demonstrated that, under Fed. R. Civ. P. Supplemental Rule E(9)(a)(B), the expense of keeping the property is excessive; accordingly,

IT IS ORDERED that Samsun's Motion for Interlocutory Sale of Vessel [doc. 7] is hereby

GRANTED,

IT IS FURTHER ORDERED that Samsun's Motion for Expedited Consideration [doc. 8] is hereby MOOT.

Lake Charles, Louisiana, this __3__ day of __Feb__, 2009.

*signature*
PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE